Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6689 | **DATE** | 9/6/2001 |
| **CASE TITLE** | TATIANA KUDINA, et al vs. IMMIGRATION & NATURALIZATION SERVICE | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMROANDUM OPINION AND ORDER: defendants' motion to dismiss the Second Amended Complaint is granted. The Court dismisses plaintiffs' federal claims pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. Accordingly, although defendants also argue that plaintiffs fail to state a claim for which relief can be granted, the Court need not reach the merits of the Rule 12(b)(6) motion. Pursuant to 28 USC Section 1367(c)(3), the Court, having dismissed all claims over which it has original jurisdiction, in its discretion declines to exercise supplemental jurisdiction as to Plaintiffs' state law claims for breach of contract and dismisses those claims without prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | SEP 10 2001 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 36 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TBK | courtroom deputy's initials | 01 SEP -7 AM 8: 44 | SEP 10 2001 date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TATIANA KUDINA, LEONAS MALUKAS, )
ALFONSA MALUKIENNE, NORA M. )
MORETTI-SANCHEZ, GIANNA A. )
SANCHEZ, IVANNA A. SANCHEZ, )
MARIA NICULESCU, RADU-LIVIU )
NICULESCU, SILVIU-VLAD NICULESCU, )
FUNMILAYO OGUNKOYA, DAVID )
OGUNKOYA, JUNAID PATNI,[1] MARIO )
ROMANOVIC, MARIJA ROMANOVIC, )
and NELLY VICTORIA SUYO, )
                               )
    Plaintiffs,                )
                               )
    v.                          )    99 C 6689
                               )
IMMIGRATION & NATURALIZATION )    Judge Ronald A. Guzmán
SERVICE, BRIAN PERRYMAN, District )
Director, Chicago IMMIGRATION AND )
NATURALIZATION SERVICE, )
MADELIENE ALBRIGHT, in her official )
capacity as SECRETARY OF STATE, UNITED )
STATES STATE DEPARTMENT, and )
UNITED STATES OF AMERICA, )
                               )
    Defendants.            )

SEP 10 2001

## MEMORANDUM OPINION AND ORDER

Pending is defendants' motion to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule) 12(b)(1) and 12(b)(6). Fed. R. Civ. P. 12(b)(1) and 12(b)(6). For the reasons set forth below, defendants' motion to dismiss is granted.

---

[1] Junaid Patni was dismissed from the case on April 14, 2000.



## FACTS

Tatiana Kudina is a citizen of Russia who resides in Illinois. (Sec. Am. Compl. ¶ 3.) Kudina applied for Adjustment of Status pursuant to the 1999 Diversity Visa Lottery. (*Id.*) The receipt date of her application by Immigration and Naturalization Service (INS) was December 4, 1998. (*Id.* ¶ 29.) Upon information and belief, Tatiana Kudina participated in an interview conducted by INS in Chicago, Illinois. (*Id.* ¶ 30.) On September 27, 1999 INS issued a letter to Tatiana Kudina stating that she needed to submit another set of fingerprints to the INS Application Support Center. (*Id.* ¶ 31.) The letter stated that she had seven days to comply with the request beginning September 28, 1999. (*Id.*) On September 27, 1999 INS issued a memorandum to the Fingerprint Liaison Officer in Clarksburg, West Virginia to expedite Tatiana Kudina's fingerprints. (*Id.* ¶ 32.) Tatiana Kudina's application for Adjustment of Status was not adjudicated by September 30, 1999. (*Id.* ¶ 33.) On February 9, 2000, Tatiana Kudina's application for Adjustment of Status was denied. (Defs.' Mem. Law Supp. Mot. Dismiss, Ex.1.)

Leonas Malukas and Alfonsa Malukienne entered the United States from Lithuania. (Sec. Am. Compl. ¶ 35.) Leonas Malukas was selected under the 1998 Diversity Lottery Program on July 29, 1997 to be processed for Adjustment of Status. (*Id.* ¶ 37.) Alfonsa Malukienne is the derivative spouse of Leonas Malukas. (*Id.* ¶ 36.) November 6, 1997 was the receipt date of their applications for permanent residence. (*Id.* ¶ 38.) On January 26, 1999 their applications for adjustment of permanent resident status were denied. (*Id.* ¶ 36.)

Nora Moretti-Sanchez, Gianna Sanchez, and Ivanna Sanchez entered the United States from Venezuela. (*Id.* ¶ 42.) On July 20, 1998 Nora Moretti-Sanchez was selected

2

under the 1999 Diversity Lottery Program to be processed for adjustment of status. (*Id.* ¶ 44.) Gianna Sanchez and Ivanna Sanchez are the children and derivative dependents of Nora Moretti-Sanchez. (*Id.* ¶ 43.) On November 1, 1999 their applications for adjustment of permanent residence status were denied. (*Id.* ¶ 45.)

Maria Niculescu entered the United States from Romania. (*Id.* ¶ 48.) Radu-Liviu Niculescu and Silviu-Vlad Niculescu are Maria Niculescu's children and are currently residing in Romania. (*Id.* ¶¶ 49-50.) Maria Niculescu was selected under the 1998 Diversity Lottery Program on June 30, 1997. (*Id.* ¶ 51.) On October 22, 1997 the United States Department of Justice received Maria Niculescu's application for permanent residence. (*Id.* ¶ 52.) Maria Niculescu was interviewed by INS on September 30, 1998, the last possible day for an interview under the 1998 Diversity Lottery Program. (*Id.* ¶ 53.) On September 30, 1998, Maria Niculescu was awarded adjustment of permanent resident status. (*Id.* ¶ 54.) Radu-Liviu Niculescu and Silviu-Vlad Niculescu's applications for adjustment of permanent resident status were denied because an interview with the U.S. Embassy in Bucharest did not take place until August of 1999, eleven months after the expiration of the 1998 Diversity Lottery Program. (*Id.* ¶ 55.)

Funmilayo Ogunkoya and David Ogunkoya entered the United States from Nigeria. (*Id.* ¶ 58.) On June 20, 1995 Funmilayo Ogunkoya was selected under the 1996 Diversity Lottery Program to be processed for adjustment of status. (*Id.* ¶ 60.) David Ogunkoya is the derivative spouse of Funmilayo Ogunkoya under the 1996 Diversity Lottery Program. (*Id.* ¶ 59.) On March 27, 1996, INS conducted an adjustment of status interview of both Funmilayo Ogunkoya and David Ogunkoya. (*Id.* ¶ 63.) Funmilayo I. Ogunkoya and David Ogunkoya, through there attorneys made several inquiries with INS

3

regarding status of their case. (*Id.* ¶¶ 65-66.) On September 26, 1996, Funmilayo I. Ogunkoya and David Ogunkoya appeared in person at the INS office Baltimore Maryland and were assured by INS that visa numbers would be reserved for them and that they should return to the office on September 30, 1996 to retrieve them. (*Id.* ¶ 67.) On September 30, 1996, Funmilayo I. Ogunkoya and David Ogunkoya appeared at the INS office for their passports to be stamped, but were informed for the first time that the Service had requested additional documents through a document dated April 22, 1996. (*Id.* ¶ 68.) Funmilayo I. Ogunkoya and David Ogunkoya were informed that if they submitted the requested divorce certificate of David Ogunkoya by the end of the day their adjustment of status applications would be approved. (*Id.* ¶ 71.) Funmilayo I. Ogunkoya and David Ogunkoya submitted the document by the end of the day. (*Id.* ¶ 72.) On February 27, 1997, Funmilayo Ogunkoya and David Ogunkoya's applications for adjustment of status were denied. (*Id.* ¶ 73.)

Mario Romanovic entered the United States from Croatia. (*Id.* ¶ 82.) On July 29, 1997, he was selected under the 1998 Diversity Lottery Program to be processed for adjustment of status. (*Id.* ¶ 84.) Marija Romanovic is the derivative spouse of Mario Romanovic under the 1998 Diversity Lottery Program. (*Id.* ¶ 83.) On November 7, 1997 the United States Department of Justice received Mario Romanovic's application for permanent residence in the United States. (*Id.* ¶ 85.) On July 29, 1998 the United States Department of Justice received Marija Romanovic's application for permanent residence in the United States. (*Id.* ¶ 86.) On July 14, 1999 Mario Romanovic and Marija Romanovic both participated in an Adjustment of Status interview conducted by INS in

Chicago. (*Id.* ¶ 87.) On July 14, 1999 Mario Romanovic's application for adjustment of permanent resident status was denied. (*Id.* ¶ 88.)

Nelly Victoria Suyo entered the United States from Peru. (*Id.* ¶ 90.) On August 26, 1996, she was selected under the 1997 Diversity Lottery Program to be processed for adjustment of status. (*Id.* ¶ 91.) In January of 1997 Nelly Victoria Suyo's application for permanent residence in the United States was submitted. (*Id.* ¶ 92.) On February 19, 1999 Nelly Victoria Suyo's application for adjustment of permanent resident status was denied. (*Id.* ¶ 93.)

## **DISCUSSION**

First, defendants have moved to dismiss plaintiffs' second amended complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. A court must accept as true all well pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff in a motion to dismiss for lack of subject matter jurisdiction where the motion simply challenges the sufficiency of the allegations of subject matter jurisdiction. *United Transp. Union v. Gateway Western Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). If the motion disputes the truth of the allegations, however, the court may "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993).

Plaintiffs contend that this Court has mandamus jurisdiction pursuant to 28 U.S.C. § 1361. This section provides "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States

or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus, however, is precluded by plain and unambiguous language of the Immigration and Nationality Act § 1252(a)(2)(B)(i), which states that "[n]otwithstanding any other provision of law, no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1255 [(addressing adjustment of status of nonimmigrant to that of person admitted for permanent status)]." 8 U.S.C. § 1252(a)(2)(B)(i); *Holasek v. United States Dep't of Justice*, 123 F. Supp. 2d 1126, 1129 (N.D. Ill. 2000). Decisions made by immigration officials are judgments. *Amoakowaa v. Reno*, 94 F. Supp. 2d 903, 905 (N.D. Ill. 2000). Although a court is not divested of jurisdiction pursuant to this section where INS has failed to adjudicate an adjustment of status application, *Paunescu v. INS*, 76 F. Supp. 2d 896, 900 (N.D. Ill. 1999), a court is expressly divested of jurisdiction to review a denial of an application for adjustment of status, *McBrearty v. Perryman*, 212 F.3d 985, 987 (7th Cir. 2000).

In the present case, plaintiffs ask this Court, via a mandamus petition, to compel defendants to adjudicate their applications for adjustment of status. Each plaintiff contends that INS failed to adjudicate his or her adjustment of status application by the end of each fiscal year, the time limit specifically required by INS rules and procedure. The failure to adjudicate each plaintiffs' application within the time required resulted in automatic denials of each of the applications. Therefore, plaintiffs maintain that their applications were not adjudicated. However, plaintiffs admit that each of their applications for adjustment of status was denied. Plaintiff Funmilayo Ogunkoya was selected under the 1996 Diversity Lottery Program. (Sec. Am. Compl. ¶ 60.) Plaintiff Nelly Victoria Suyo was selected under the 1997 Diversity Lottery Program. (*Id.* ¶ 91.)

6

Plaintiffs Leonas Malukas and Mario Romanovic were selected under the 1998 Diversity Lottery Program. (*Id.* ¶¶ 37, 98.) While plaintiffs maintain that INS failed to issue their decision prior to INS's own deadline, there is no question that each were denied adjustment of status. The same can be said for plaintiffs Tatiana Kudina and Nora Moretti-Sanchez who were selected under the 1999 Diversity Lottery Program. (*Id.* at ¶¶ 28, 43.) Plaintiffs cannot maintain that their applications were denied but never adjudicated. A denial is an adjudication. As plaintiffs applications for adjustment of status were adjudicated and denied, their claims are not reviewable.[2]

With respect to plaintiffs Radu-Niculescu and Silviu-Vlad Niculescu, this Court is prohibited from reviewing their visa denials pursuant to the doctrine of consular non-reviewability. The law is well-settled that a consular officer's denial of a visa application is not subject to judicial review. *Centeno v. Shultz*, 817 F.2d 1212, 1213 (5th Cir. 1987) (citing *Kleindienst v. Mandel*, 408 U.S. 753 (1972)).

Even if mandamus jurisdiction were not precluded by section 1252(a)(2)(B)(i) of the INA, this Court could not invoke mandamus jurisdiction because, at the minimum, plaintiffs have another adequate remedy available. "Mandamus jurisdiction can be invoked only when the plaintiff has a clear right to the relief sought, the defendants have a clear duty to perform, and no other adequate remedy is available." *Blaney v. United States*, 34 F.3d 509, 513 (7th Cir. 1994). The court is precluded from reviewing the administrative decisions of the INS unless all administrative remedies available have been exhausted. *McBrearty v. Perryman*, 212 F.3d 985, 987 (7th Cir. 2000). An

---

[2] Each plaintiff's application for adjustment of status has been adjudicated and denied with the exception of Marija Romanovic. Marija Romanovic is the derivative spouse of Mario Romanovic under the 1998 Diversity Lottery Program. As Mario Romanovic's application was adjudicated and denied, Marija Romanovic's application was automatically denied.

individual denied adjustment of status has the right to renew his or her request for adjustment of status upon the commencement of removal proceedings. 8 C.F.R. § 252.2(a)(5)(ii)(1999); *McBrearty*, 212 F.3d at 987. Judicial review is not entirely foreclosed, but simply deferred for the potential presentation at a later date before a different court. *Cruz v. INS*, 871 F. Supp. 1049, 1052 (N.D. Ill. 1995).

> There is no question that [an applicant] can assert [his or] her claim before an Immigration Judge in a deportation proceeding, followed by an appeal to the Board of Immigration Appeals and by review by the Court of Appeals pursuant to Act § 1105a. By invoking the exhaustion doctrine to deny any level of review by the District Court via § 1329, our Court of Appeals has exercised a judgment not to afford an applicant judicial review twice—once by resort to the District Court from the District Director's discretionary denial of an adjustment of status, and then again by resort to the Court of Appeals following a de novo presentation to an Immigration Judge and an appeal to the Board of Immigration Appeals.

*Id.* at 1052-53. "The exhaustion doctrine protects the autonomy of administrative agencies, respects administrative expertise, facilitates judicial review by ensuring a well-developed factual record, and promotes judicial economy by avoiding piece-meal review of cases and by giving the agency the opportunity to resolve the case to the parties' mutual satisfaction without judicial interference." *Id.* at 1053.

Plaintiffs have not exhausted all of their administrative remedies. Each plaintiff may raise his or her claim before an Immigration Judge when removal proceedings commence.[3]

Plaintiffs also contend that jurisdiction is established through the Declaratory Judgment Act, 28 U.S.C. § 2201. However, this Act "does not confer jurisdiction but rather, provides an additional remedy where jurisdiction already exists." *Amoakowaa*, 94 F. Supp. 2d 903, 906 (2000) (citing *Balanyi v. Local 1031, Int'l Brotherhood of Elec. Workers AFL-CIO*, 374 F.2d

---

[3] Each plaintiff may have his or her application reviewed by an Immigration Judge with the exception Radu-Liviu Niculescu and Silviu-Vlad Niculescu. These plaintiffs will not be subject to removal proceedings as they are not in the United States. See the Court's discussion regarding consular non-reviewability.

8

723, 725 (7th Cir. 1967)). For the reasons discussed above, jurisdiction does not exist in this case.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the Second Amended Complaint is granted. The Court dismisses plaintiffs' federal claims pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. Accordingly, although defendants also argue that plaintiffs fail to state a claim for which relief can be granted, the Court need not reach the merits of the Rule 12(b)(6) motion. Pursuant to 28 U.S.C. § 1367(c)(3), the Court, having dismissed all claims over which it has original jurisdiction, in its discretion declines to exercise supplemental jurisdiction as to plaintiffs' state law claims for breach of contract and dismisses those claims without prejudice. This case is hereby terminated.

SO ORDERED 9-6-01                    ENTERED:

                                     HON. RONALD A. GUZMAN
                                     United States Judge

9